UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STACEY IAMES                                    Case No. 1:12-cv-829

          Plaintiff,                            Dlott, J.
                                                Bowman, M.J.
          vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Stacey Iames filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED because it is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") in March 2009, alleging a disability onset date of August 1, 2006 due to physical and mental impairments. After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing was held in December 2010, at which Plaintiff was represented by counsel. At the hearing, ALJ Gilbert Sheard heard testimony from Plaintiff and an impartial vocational expert, Vanessa Harris. On September

8, 2010, the ALJ denied Plaintiff's applications in a written decision. (Tr. 41-50). Plaintiff now seeks review of the ALJ's decision.

The record reflects that Plaintiff was 30 years old on her alleged onset date. She graduated from high school and completed two years of nursing school. She has past relevant work as a nurse.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "right knee derangement status-post surgery, a post traumatic stress disorder, a panic disorder, and depression." (Tr. 42). The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work, described as follows:

> She cannot understand, remember, and carry out complex job instructions. She cannot understand, remember, and carry out detailed, but not complex, job instructions. Due to difficulties maintaining attention and concentration and pace for extended periods, the job must be routine and repetitive, and be far enough from others to reduce distractions, and not require intense focused attention until the next scheduled break, and have no assembly line type of work which forces an inflexible pace. Due to difficulties with co-workers, she cannot work as part of a close-knit team, but must be doing her own work in her own workstation; there will be other people around, but she must just be doing her own thing. Her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and ability to perform at a consistent pace without an unreasonable number and length of rest periods is impaired but not precluded. She cannot work directly with the general public. Due to difficulties responding appropriately to changes in a work setting, give her a job which does not change frequently. She will miss an average of one day per month from work to be home to take care of her ailments. She needs to occasionally catch her breath after a panic attack. The job itself must be inherently not stressful. She has less than average memory. For this reason, keep the work routine and repetitive. She must be allowed to go sit down or lie down out of the way at lunch time only, but the employer does not have to affirmatively supply

2

> anything; just leave her alone to do her own thing as best she can with the facilities on hand at lunch time.. She needs to use the bathroom immediately before work starts and immediately after work, also during regular breaks, and also occasionally for short breaks during work times.

(Tr. 45-46).

Based upon the record as a whole, including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while Plaintiff is unable to perform her past relevant work, a job (edible nut sorter) existed in significant numbers in the national economy that Plaintiff could perform. (Tr.48-49). The ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and not entitled to DIB and or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate all of Plaintiff's impairments and incorporate such impairments into her RFC; (2) failing to appropriately weigh the medical opinions in the record; and (3) selectively relying on Plaintiff's daily activities in his credibility assessment. Upon close inspection, the undersigned finds that Plaintiff's assignments of error are well-taken.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability"

3

includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the

Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## B. The ALJ's Decision is not Substantially Supported and should be Reversed

### 1. *Relevant Evidence*

The record indicates that Plaintiff suffers from post traumatic stress disorder ("PTSD") (Tr. 396-401, 437-443, 506-521); migraine headaches (Tr. 444-476); irritable bowel syndrome (IBS) with diarrhea (Tr. 379-395, 444-476); internal derangement of her right knee, status post arthroscopic surgery in May 2008 (Tr. 324-337, 339-374); chronic low back pain (Tr. 345, 446, 455); and fibromyalgia. (Tr. 444-476).

Plaintiff has developed PTSD as a result significant sexual and physical abuse which began when she was a child. (Tr. 396-401, 437-443, 506-521). Plaintiff was initially treated

for her psychiatric impairments by obtaining medications from her family physician, Dr. Fabrey. (Tr. 444-476). However, in June 2010, Plaintiff began psychiatric treatment at Centerpoint Health Center. (Tr. 506-521, 528-537).

The record also indicates that Plaintiff's IBS with diarrhea is very much influenced by her emotional state, such that her episodes of diarrhea increase as her levels of anxiety increase. Plaintiff's reports of the frequency of her diarrhea have been very consistent over the years: generally speaking, she experiences 8-11 episodes per day, and these episodes are accompanied by bloating, cramping, and urgency (Tr. 207, 381, 386, 397, 433, 438, 445, 449, 450, 459). Dr. Manegold, Plaintiff's gastroenterologist, stated in November 2008 that "I get the sense, however, that [Plaintiff] is having some psychological decompensation because of all the diarrhea and the fact that this limits her social life and interactions." (Tr. 381).

Plaintiff was evaluated psychologically by Dr. Lester in April 2009. Dr. Lester opined that Ms. Iames was only mildly impaired in her ability to maintain concentration, persistence, and pace, and to withstand the stress and pressures of daily work activity. (Tr. 401).

Another consultative psychological evaluation was performed by Dr. Berg in November 2009. (Tr. 437-443). Dr. Berg diagnosed Plaintiff with Panic Disorder without Agoraphobia; Depressive Disorder, NOS, moderate with anxiety; and Trichotillomania, and assigned a GAF score of 55. (Tr. 452). Dr. Berg opined that Plaintiff has moderate limitations in relating to others; moderate limitations in maintaining attention, concentration, persistence, and pace; and marked limitations in her ability to withstand the stress and pressure of daily work activity. (Tr. 453).

In November 2010, Plaintiff's treating psychiatrist, Dr. Rahman, completed a mental

6

impairment questionnaire for Plaintiff.  (Tr. 538-543).  In Dr. Rahman's professional medical opinion, Plaintiff is unable to adequately perform many of the mental activities required for competitive work. *Id*

In November 2010, Dr. Fabrey completed a Physical Residual Functional Capacity Questionnaire wherein he opined that Plaintiff was limited to less than sedentary work.  (Tr. 544-48).  Dr. Fabrey listed Plaintiff's diagnoses as PTSD, depression, anxiety, panic disorder, insomnia, trichotillomania, right knee pain and IBS.  Dr. Fabrey did not list any clinical or objective signs supporting his findings.

    *2.  Evaluation Plaintiff's symptoms related to IBS*

Plaintiff's first assignment of error asserts that the ALJ erred by finding that Plaintiff's IBS with abdominal pain and diarrhea, her low back pain, and her headaches are "not severe" impairments.  As a result, Plaintiff contends that the ALJ's RFC failed to properly account for all of Plaintiff's impairments.  Upon close inspection, the undersigned agrees that the ALJ's RFC determination failed to properly evaluate Plaintiff's IBS resulting symptoms.

With respect to Plaintiff's complaints regarding her abdominal pain and diarrhea related to IBS, the record contains numerous citations to Plaintiff's complaints of frequent diarrhea.  (Tr. 375-378, 379, 381, 382, 386, 450, 451, 456, 457, 459-460, 527).  In September 2006, Plaintiff reported to her family physician, Dr. Fabrey, that she had as many as 11 loose stools per day.  (Tr. 445).  In 2007, Plaintiff twice told Dr. Fabrey that she had frequent loose stools.  (Tr. 449-450).  The record further reveals that Plaintiff reported of significant weight loss in early 2008, Plaintiff weighed approximately 180 pounds (*See* Tr. 453, 360) but only one year later, by early 2009, Plaintiff's weight was down to

approximately 150 pounds. (*See* Tr. 206, 457)

In November 2008, Plaintiff reported to Dr. Manegold that she had up to 10 loose stools per day, her hemorrhoids were symptomatic, and that she had lost 30 pounds since earlier that year. (Tr. 381). In 2009, Plaintiff attended three different consultative examinations at the request of the Social Security Administration. (Tr. 396-401, 428-436, 437-443). At each consultative examination, Plaintiff reported that her loose stools occur at an average of 11 times per day. (Tr. 397, 433, 438). In June 2009, Plaintiff told Dr. Fabrey that her loose stools occurred at least 8 times per day. (Tr. 459).

The record also indicates that Plaintiff was prescribed numerous prescription medications in an effort to control her IBS symptoms, including: Symax Cuotabs, Librax. Elavil, Pamelor and Bentyl. Plaintiff complained of some improvement in her symptoms, however, many of the medications caused excessive drowsiness. (Tr. 467)

As noted above, the ALJ found that Plaintiff's suffers from the following severe impairments: right knee derangement status-post surgery, a post traumatic stress disorder, a panic disorder, and depression. The ALJ determined that Plaintiff's IBS was not a severe impairment. In this regard,the ALJ's decision states in relevant part:

> The claimant complains of gut pain and diarrhea. The undersigned finds that this is a non-severe impairment due to a lack of objective medical evidence. The treating physicians diagnosis of irritable bowel syndrome is a default or spurious diagnosis.[1] She does hurt, but she says that her treatment

---

[1] In addition to this statement, at the administrative hearing, the ALJ referred to IBS as a "garbage diagnosis." Thus, it appears that the ALJ questioned the legitimacy of IBS (and its resulting symptoms) as an actual medical condition. As such, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975). Moreover, despite the ALJ's apparent skepticism of IBS, courts have found IBS related symptoms to be disabling. *See Alcock v. Comm'r of Soc. Sec. Admin.*, 1:10-CV-6206-MA, 2011 WL 5825922 (D. Or. Nov. 16, 2011)(reversing ALJ decision and remanding for an immediate award of benefits based upon plaintiff's consistent reports of experiencing

> physician thinks it's a mental symptom.  The undersigned agrees, and allows it as a symptom of post traumatic stress disorder.

(Tr. 42).

Pursuant to Social Security Regulations, once the ALJ determines a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps of the sequential evaluation process.  20 C.F.R. § 404.1545(e).  If an ALJ considers all of a claimant's impairments (both severe and non-severe) in determining the claimant's RFC, the ALJ's failure to characterize additional impairments as "severe" is not reversible error.  *See Glenn v. Astrue,* Case No. 3:09-cv-296, 2010 WL 4053548, at *14 (S.D. Ohio Aug. 13, 2010) (citing *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, assuming, *arguendo*, that the ALJ properly determined that Plaintiff's IBS symptoms were not severe, he was required to consider those impairments in determining Plaintiff's RFC.  Although the ALJ states that Plaintiff's complaints related to IBS will be considered as a symptom of post traumatic stress disorder, there is no indication from the ALJ's decision that he considered Plaintiff's complaints of excessive and persistent diarrhea in his RFC analysis.  In his decision, the ALJ noted that Plaintiff complained of gut pain, but did not find that the objective evidence fully supported her complaints.  Notably absent from the ALJ's RFC analysis, however, is any discussion of Plaintiff's IBS and complaints of frequent diarrhea and any functional limitations associated thereto (*i.e*, frequent restroom breaks, missed days, etc.).

---

severe, persistent, and sometimes unpredictable diarrhea and severe migraine headaches which prevent her from sustaining competitive employment).

The ALJ's failure to reference this evidence and/or provide any indication that such evidence was considered prevents the Court from engaging in meaningful review of the ALJ's decision.  *See Morris v. Secretary of Health & Human Servs.*, Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (when an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored")); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if, "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result"); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) ("[M]eaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence").

Here*,* the ALJ's failure to properly consider and evaluate Plaintiff's IBS symptoms pursuant to Social Security Regulations prevents the Court from determining whether the ALJ's RFC is supported by substantial evidence.  Accordingly, Plaintiff's first assignment of error should be sustained and this matter should be remanded for further fact-finding.

### 3. Evaluation of the Opinion Evidence

Plaintiff's next assignment of error asserts that the ALJ improperly weighed the medical opinion evidence. Specifically, Plaintiff asserts the ALJ erred in giving controlling weight to the opinions of Plaintiff's treating physician, Dr. Fabrey; and her treating psychiatrist, Dr. Rahman.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship

and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.' " *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected*." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

11

The ALJ must satisfy the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'  Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)."  *Wilson,* 378 F.3d at 544.  The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Id.*  Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the ALJ's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal.  *Id.* at 547.

A.    *Dr. Fabrey*

With respect to Dr. Fabrey, the ALJ rejected his assessment, noting that it was internally inconsistent (Dr. Fabrey had opined that Ms. Iames could sit for more than two hours at a time, but also could sit for less than two hours total in an eight-hour workday.), was "considerable over restrictive," and was without any "substantive objective support." (Tr. 47).  The undersigned finds that the ALJ's decision is substantially supported in this regard. Notably, an ALJ may properly discount a treating physician's disability assessment that is internally inconsistent.  *See Haynes v. Astrue*, 11-185 (S.D. Ohio Jan. 20, 2012). Furthermore, as noted above, it is well established that a treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques. . . ." *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th

12

Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). Here, when asked to identify clinical findings and objective signs to support his opinion, Dr. Fabrey responded "none" (Tr. 544). In light of the foregoing, the undersigned finds that Plaintiff's assertions are not well-taken in this regard.

     B.    *Dr. Rahman*

Plaintiff also asserts that the ALJ improperly evaluated the findings of Dr. Rahman, Plaintiff's treating psychologist. As detailed above, Dr. Rahman opined, among other things, that Plaintiff was "unable to meet competitive standards" in completing a normal workday and workweek without interruptions from psychologically based symptoms and had marked limitations in maintaining concentration, persistence, or pace. (Tr. 538-43). However, the ALJ rejected Dr. Rahman's assessment because he had a limited treating history with Plaintiff, having seen her on only two occasions; there were no supporting treating notes or other evidence from Dr. Rahman; and his conclusions were inconsistent with the two consultative psychological evaluations of record. (Tr. 48, citing Tr. 396-401, 437-43).

Plaintiff asserts that Dr. Rahman's assessment was supported by the treatment notes and objective findings[2] of Dr. Fabrey and her mental health providers at Centerpoint Health Center. These include clinical findings such as poor concentration, depressed and anxious mood, insomnia, blunted effect, anger and helplessness. (Tr. 444, 448, 457, 460-61, 506-

---

[2]Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b).

521, 527, 528-537).  Thus, such objective evidence and treatment notes should have been

considered by the ALJ in his evaluation of Dr. Rahman's assessment. There is no indication

that he did so.

Furthermore when mental illness is the basis of a disability claim, clinical and

laboratory data may consist of the diagnosis and observations of professionals trained in the

field of psychopathology. The report of a psychiatrist should not be rejected simply because

of the relative imprecision of the psychiatric methodology or the absence of substantial

documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121, (6th Cir.1989).  In *Blankenship*, the Sixth Circuit

concluded that no cause existed to question the diagnosis of a psychiatrist made after only

**one** interview and where no psychological testing had been conducted and even though the

doctor noted the need for a more accurate history.  *Blankenship*, 874 F.2d at 1121.

(Emphasis added).  Thus, the fact that Dr. Rahman had seen Plaintiff on only two occasions,

standing alone, is not a proper basis to discredit his findings.

Accordingly, because this matter must be remanded as outlined above, the

undersigned finds that the ALJ's evaluation of the opinion evidence relating to Plaintiff's

mental impairments should also be revisited on remand so that the ALJ can properly evaluate

the medical evidence of record in accordance with agency regulations and controlling law.

*4.  ALJ's consideration of Plaintiff's Credibility*

Plaintiff's next assignment of error asserts that the ALJ improperly assessed Plaintiff's

credibility.  SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and
> articulated in the determination or decision.  It is not sufficient to make a
> conclusory statement that 'the individual's allegations have been considered'

14

or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, with respect to her mental impairments, the ALJ determined that her subjective complaints of disability were not credible because such complaints were inconsistent with her daily activities.  Namely, despite Plaintiff's complaints of disabling mental impairments,  the ALJ noted that Plaintiff prepares meals, transports her children places, helps with homework, does laundry and cleaning. (Tr. 47).  The ALJ further noted that she goes shopping, dances in her home, and helps with charities.  *Id.*  However, in making this finding, the ALJ erred by

15

selectively relying on Plaintiff's testimony regarding her daily activities.  *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.") It is well recognized that a claimant's ability to perform limited and sporadic tasks does not mean that she is capable of full-time employment. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir.2004); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001).  The undersigned finds that Plaintiff's  ability to engage in such daily activities does not establish *ipso facto* that she is able to engage in gainful activity 40 hours per week.

Furthermore, because the ALJ failed to properly consider Plaintiff's IBS related symptoms and must reconsider the opinion evidence of record, it is also necessary for Plaintiff's credibility determination to be considered on remand.  The impairments that the ALJ found credible were included in her RFC determination, but the picture may change after the medical evidence is reevaluated on remand, making it appropriate to keep this question open also.

### III.  Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment

on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation. As no further matters remain pending for the Court's review, this case be **CLOSED.**

  *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STACEY IAMES                                         Case No. 1:12-cv-829

      Plaintiff,                                      Dlott, J.
                                                     Bowman, M.J.
      vs.

CAROLYN W. COLVIN, acting
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

18